**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARILYN BECK,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO.  08-1755** |
| | : | |
| **HOLLY TREE HOMEOWNERS** | : | |
| **ASSOCIATION, ET AL.,** | : | |
| | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM OPINION</u>**

**Tucker, J.**                                                     **February \_\_\_, 2010**

        Presently before the Court are the Motion for Summary Judgment filed by Defendants,

Holly Tree Homeowners Association ("Holly Tree") and RMS Management, Inc. ("RMS")

(collectively, "Defendants") (Doc. 28); the Motion for Summary Judgment filed by Third Party

Defendants, Ray's Snow Plowing and Ray Gambone (collectively, "Third Party Defendants")

(Doc. 29); Plaintiff's Opposition in response to both motions (Doc. 30); and, the Response in

Support of Motion for Summary Judgment filed by Defendants, Holly Tree and RMS (Doc. 31).

For the reasons set forth below, this Court will grant the motion filed by Defendants and dismiss

the motion filed by Third Party Defendants.

**<u>BACKGROUND</u>**

        This action arises from Plaintiff's slip and fall accident which occurred while she was a

resident at a townhouse she owned in the Holly Tree Estates in Chester Springs, Pennsylvania.

Defendants, Holly Tree and RMS, are the homeowners' association and property management

company, respectively, that were allegedly responsible for maintaining the common area

walkway on which Plaintiff fell.  As a townhouse owner, Plaintiff was required to pay dues to the

property manager, and Plaintiff received snow removal services with respect to the parking areas and the common sidewalks. Plaintiff alleges that, on December 5, 2005, at around 6:00 p.m., she was walking from the mailbox, located in a common area of her townhouse complex, back to her townhouse when she stepped on what appeared to be dry concrete and slipped. The curb did not appear to be icy or snow-covered, and Plaintiff did not see what caused her to fall. After she fell, a neighbor who resided in the community, William Parlaman, observed Plaintiff lying on the ground and went to her aid. As a result of her fall, Plaintiff sustained a severe wrist fracture. At issue in this case is whether Defendants are liable for damages allegedly sustained by Plaintiff as a result of the slip and fall accident. Specifically, Plaintiff alleges that Holly Tree breached its contractual obligations by failing to properly maintain the common areas of the association property (Count I). Plaintiff also alleges that Holly Tree was negligent in failing to provide maintenance in the form of snow and/or ice removal (Count II). Plaintiff further claims that RMS was negligent in failing to provide maintenance in the form of snow and/or ice removal (Count III).

In addition, Holly Tree and RMS have brought a third party complaint against Ray's Snow Plowing and Ray Gambone, alleging breach of contract and claiming joint and several liability or indemnification and/or contribution from Ray's Snow Plowing and Ray Gambone. Holly Tree and RMS contracted with Third Party Defendants, Ray's Snow Plowing and Ray Gambone, for the provision of snow removal and ice melting services. (Third Party Compl. ¶ 7.) They allege that Third Party Defendants were responsible for the care and maintenance of the common area, as well as for inspection of the premises, plowing, snow and ice removal, and application of ice melt products. (Third Party Compl. ¶ 13.) They also allege that Third Party Defendants were contractually obligated to indemnify them against certain claims arising out of

the performance of the work, and "to provide a certificate of insurance naming the property

owner and property manager as an additional insured." (Third Party Compl. ¶ 19.) Accordingly,

Holly Tree and RMS bring three claims against Third Party Defendants, grounded in theories of

common law indemnification (Count I), contractual indemnification (Count II), and breach of

contract (Count III). Therefore, an additional issue in this case is the extent to which Third Party

Defendants are liable for Plaintiff's injuries and/or for breaching any contractual obligations

owed to Holly Tree and RMS.

## STANDARD OF REVIEW

Summary judgment is appropriate where the movant establishes that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56©; Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual

dispute between the parties will not defeat a motion for summary judgment unless it is both

genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v.

Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a

reasonable jury could return a verdict for the non-movant, and it is material if, under the

substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete

v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002). The moving party must show that if the

evidentiary material of record were reduced to admissible evidence in court, it would be

insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett,

477 U.S. 317, 327 (1986).

Once the movant has carried its burden under Rule 56, "its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550

U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986)).  Under Rule 56(e), the opponent must set forth specific facts showing a genuine

issue for trial and may not rest upon the mere allegations or denials of its pleadings.  See Martin

v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).  At the summary judgment stage, the court's

function is not to weigh the evidence and determine the truth of the matter, but rather to

determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249; Jiminez v.

All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007).  In doing so, the court must

construe the facts and inferences in the light most favorable to the non-movant.  See Matsushita,

475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d

Cir. 2001).  The court must award summary judgment on all claims unless the non-movant shows

through affidavits or admissible evidence that an issue of material fact remains.  See, e.g., Love

v. Rancocas Hosp., 270 F. Supp. 2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry

Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

## **DISCUSSION**

Defendants have moved for summary judgment on the grounds that: (1) Pennsylvania's

"hills and ridges" doctrine precludes Plaintiff from recovering in this suit; (2) Plaintiff has not

established that Defendants had notice of any alleged dangerous condition; and (3) Plaintiff has

not established that her slip and fall was caused by black ice.  Similarly, Third Party Defendants

argue that Plaintiff has failed to establish the requisite causal connection; therefore, Plaintiff has

failed to state a claim for negligence or breach of contract against Defendants and, as a result, all

third party claims must also fail.  In response, Plaintiff argues that Defendants are not entitled to

summary judgment because: (1) the icy conditions on the day of the fall were not the result of a

purely natural accumulation, precluding application of the hills and ridges doctrine; (2)

Defendants had notice of the icy conditions; and (3) there is a genuine issue of material fact as to

4

the cause of Plaintiff's fall. Since Third Party Defendants' motion hinges on the Court's finding as to whether Defendants are entitled to summary judgment, this Court will proceed by addressing Defendants' motion first.

## I.      **Holly Tree and RMS's Motion**

Defendants argue that they are protected from liability by the hills and ridges doctrine because Plaintiff cannot prove that: (1) the snow accumulated into hills and ridges which unreasonably obstructed travel and constituted a danger; (2) Defendants had notice of that condition; and (3) Plaintiff fell as a result of that condition. (Defs.' Reply 11-14.) Defendants' argument is premised on the assumption that there were generally slippery conditions, and that under such circumstances, Defendants had no duty to clear the snow. (Defs.' Reply 14.) Thus, Defendants maintain that absent a finding of hills and ridges, they neither owed nor breached any duty to Plaintiff, and as a result, cannot be held liable for Plaintiff's slip and fall. (Defs.' Reply 14.)

Defendants also contend that they had no notice of any alleged dangerous condition, and that absent such notice, a landowner cannot be liable to an invitee injured by such a condition. (Defs.' Reply 13.) Specifically, Defendants point to the testimony of Plaintiff and her neighbor, Mr. Parlaman, that snow had been falling for only approximately a half hour to an hour prior to the time of the incident. (Defs.' Reply 13.) Defendants assert that Plaintiff has failed to show that they had either actual or constructive notice of any alleged hazardous condition. (Defs.' Reply 13.)

Defendants further argue that Plaintiff cannot prove what actually caused her to fall and can only speculate as to the possible cause. (Defs.' Reply 11.) Defendants rely on Plaintiff's testimony that she never saw what caused her to fall and could only assume she fell on black ice

because it looked invisible. (Defs.' Reply 14.) Furthermore, since Plaintiff testified that she walked through a small amount of snow on the grass before approaching the walkway, Defendants argue that the only realistic explanation for Plaintiff's fall is that she slipped as a result of snow on the bottom of her shoes. (Defs.' Reply 14.)

## II.  **Third Party Defendants' Motion**

Third Party Defendants, Ray's Snow Plowing and Ray Gambone, argue that Plaintiff has failed to produce evidence of the proximate cause of her injuries. As a result, she has failed to state a cause of action for negligence, and in turn, has failed to state a cause of action for breach of contract against Defendants, Holly Tree and RMS. Therefore, all third party claims must fail. Specifically, Third Party Defendants aver that Plaintiff testified that the area where she slipped did not appear wet, icy, or covered with snow, and, therefore, Plaintiff has failed to show that there was any ice on the curb where she slipped and that ice was the actual cause of her injuries. (Third Party Defs.' Mot. Summ. J. ¶ 10.) Furthermore, they contend that the statement provided by Mr. Parlaman does not indicate that Plaintiff slipped on black ice, that Plaintiff told him she slipped on black ice, or that he observed black ice in the area where Plaintiff fell. (Third Party Defs.' Mem. Supp. Mot. Summ. J. 6.) Mr. Parlaman also testified that he saw no ice where Plaintiff fell and only a fresh coating of light snow. (Third Party Defs.' Mem. Supp. Mot. Summ. J. 6-7.) Consequently, Third Party Defendants argue that Plaintiff has failed to establish the requisite causal connection between Defendants' alleged negligence and her resulting injuries. (Third Party Defs.' Mem. Supp. Mot. Summ. J. 9.)

Third Party Defendants also aver that the contract specifications required them to apply deicing material to the property whenever snow accumulation was under two inches and icy conditions existed, but did not specify when or how often they should do so. (Third Party Defs.'

Mot. Summ. J. ¶ 6.) They further argue that the owner of RMS, Leslie Bianchini, testified that the timing of the application of deicing material was never established, and that such deicing could take place at any time in relation to snowfall of less than two inches. (Third Party Defs.' Mot. Summ. J. ¶ 7.) Thus, Third Party Defendants challenge the assertion of Holly Tree and RMS that they were responsible for snow removal activities and the placement of deicing material on the Holly Tree property on the date of Plaintiff's fall.

III. **Plaintiff's Opposition**

Plaintiff argues that the hills and ridges doctrine applies only in cases where the snow and ice are the product of a natural accumulation following a recent snowfall. Plaintiff maintains that human intervention with the snow renders inapplicable the hills and ridges doctrine. Applying those principles, Plaintiff avers that Third Party Defendant Gambone was on the premises the day before the incident, engaging in ice removal activity. (Pl.'s Opp. 9.) He did not check for snow or ice conditions at that time, and he did not return the next day to check for refreeze consistent with his customary practice. (Pl.'s Opp. 9-10.) According to Plaintiff, Gambone did not use enough icemelt, which resulted in the formation of black ice when the temperature fell below freezing. (Pl.'s Opp. 10.) Furthermore, Plaintiff argues, since Gambone was on the property applying the deicing material, Defendants cannot claim that they had no notice of the icy conditions. (Pl.'s Opp. 10.)

Plaintiff also contends that "there is no notice issue with respect to either defendant." (Pl.'s Opp. 10.) Specifically, Plaintiff states that Gambone was on the property on December 4, 2005 to apply deicing material. (Pl.'s Opp. 10.) Therefore, RMS and Gambone cannot claim that they had no notice of the icy conditions. (Pl.'s Opp. 10.) Moreover, Plaintiff avers that Gambone failed to return and to apply sufficient deicing material, and such failure caused the

black ice that injured Plaintiff. (Pl.'s Opp. 10.)

Plaintiff further argues that observation of a dangerous condition before or after a fall is not a prerequisite to proving negligence. (Pl.'s Opp. 8.) Plaintiff submits that she may not have seen the black ice, but she felt it beneath her feet, and there is no contradictory testimony from Defendants regarding the absence of black ice. (Pl.'s Opp. 9.) Accordingly, Plaintiff maintains that the issue of the condition of the curb is a credibility question for the jury.

## IV.  Analysis

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish a sufficient disagreement regarding material facts to defeat summary judgment.

### A.  The Hills and Ridges Doctrine Applies.

Contrary to Plaintiff's assertion, the record supports a finding that the hills and ridges doctrine applies. Generally, Pennsylvania law does not impose an absolute duty on property owners to keep their premises and abutting sidewalks completely free from snow and ice at all times. Mack v. AAA Mid-Atlantic, Inc., 511 F. Supp. 2d 539, 546 (E.D. Pa. 2007) (citing Rinaldi v. Levine, 176 A.2d 623, 625 (Pa. 1962)). Under the hills and ridges doctrine, owners and occupiers are shielded from liability for "generally slippery conditions resulting from ice and snow" where the owner or occupier "has not permitted ice and snow to unreasonably accumulate in ridges or elevations" that remain for an unreasonable amount of time. Tameru v. W-Franklin, L.P., No. 07-1965, 2008 U.S. Dist. LEXIS 68770, at *10-11 (E.D. Pa. Sept. 11, 2008); Convery v. Prussia Assocs., No. 99-2469, 2000 U.S. Dist. LEXIS 2070, at *5 (E.D. Pa. Mar. 1, 2000) (citing Morin v. Traveler's Rest Motel, 704 A.2d 1085, 1087 (Pa. Super. Ct. 1997)). Such protection is extended to owners and occupiers because "to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions

8

in this hemisphere." Gilligan v. Villanova University, 584 A.2d 1005, 1007 (Pa. Super. Ct. 1991). In order to recover under the hills and ridges doctrine, a plaintiff must show:

> (1) that the snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; [and] (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

Mack, 511 F. Supp. 2d at 546-47 (citing Rinaldi, 176 A.2d at 625). Thus, generally slippery conditions are not sufficient to establish liability; rather, the plaintiff must show that there were dangerous conditions due to ridges or elevations that were allowed to persist for an unreasonable amount of time.

However, the hills and ridges doctrine "applies only in cases where the snow and ice at issue are the result of 'an entirely *natural* accumulation, following a recent snowfall.'" Tameru, 2008 U.S. Dist. LEXIS 68770, at *10-11 (citations omitted) (emphasis added). Accordingly, Pennsylvania courts have recognized two exceptions to the hills and ridges doctrine. See Williams v. United States, 507 F. Supp. 121, 123 (E.D. Pa. 1981) (citing Bacsick v. Barnes, 341 A.2d 157, 160 (Pa. Super. Ct. 1975)). First, the doctrine does not apply where there is a localized, isolated patch of ice and the conditions in the community are not generally slippery. Id. (citation omitted); see also Smith v. Allen, No. 95-7775, 1996 U.S. Dist. LEXIS 13699, at *4-5 (E.D. Pa. Sept. 18, 1996) (citing Tonik v. Apex Garages, Inc., 275 A.2d 296, 298 (Pa. 1971)); Liggett v. Pennsylvania's N. Lights Shoppers City, Inc., 75 Pa. D. & C.4th 322, 328 (Pa. Comm. Pl. 2005)). Where the ice is localized, "it is comparatively easy for a property owner to take the necessary steps to alleviate the condition, while at the same time considerably more difficult for the pedestrian to avoid it even exercising the utmost care." Williams v. Shultz, 240

A.2d 812, 814 (Pa. 1967) (finding that hills and ridges doctrine did not apply where plaintiff fell on isolated patch of ice covered by leaves on sidewalk and sidewalk was otherwise clear).

Second, the hills and ridges doctrine does not apply "when an icy condition is caused by the defendant's neglect, such as where a defective hydrant, water pipe or drain caused the icy condition." Williams, 507 F. Supp. at 123 (citation omitted); Harvey v. Rouse Chamberlin, Ltd., 901 A.2d 523, 527 (Pa. 2006); Bacsick, 341 A.2d at 160 (finding that the snow bank was "of artificial origin" because it was "apparently deposited as the result of the plowing of the street by the city and state snow plows"); Diehl v. Fidelity-Philadelphia Trust Co., 49 A.2d 190, 191-92 (Pa. Super. Ct. 1946) (plaintiff fell on a thin sheet of ice which formed as a result of the condensation of steam negligently emitted from the property adjoining the defendant's property).

Here, Plaintiff is not arguing that there were no generally slippery conditions, and that there was only a localized patch of ice. Instead, Plaintiff is arguing that the alleged black ice was the result of inadequate snow removal activities and, therefore, cannot be an entirely natural accumulation following a recent snowfall. Unlike Harvey, the case cited by Plaintiff to support that proposition, here the Court finds that there is no genuine dispute as to whether the alleged black ice was the result of purely natural phenomena. In Harvey, the undisputed evidence showed that there was a snow storm, the defendant snow removal company plowed the roads after the storm, and the plaintiff slipped and fell on black ice while walking on the road. 901 A.2d at 527. During her travel, the plaintiff alternated between walking on the street and walking on the sidewalk because portions of the sidewalk had not been cleared. Id. at 525. She observed that "some portions of the road were covered with packed down snow from being plowed and that there were patches of cleared asphalt." Id. As she approached one area of the sidewalk, she decided to walk in the road, which "appeared to be clear and dry." Id. While walking on the

10

road, she claims she slipped on black ice.  Id.  The court concluded that due to the defendant's "interaction with the snow via plowing," the ice at issue "could not have been 'the result of an entirely natural accumulation.'"  Id. at 527 (citations omitted).

In addition, the court in Harvey found that there was a factual dispute regarding whether the defendant salted the roads after plowing them.  Id.  The snow plow operator testified at trial that he salted the roads, but later was impeached by his prior statement that he could not remember whether he salted the roads.  Id. at 527-28.  Moreover, a witness to the slip and fall testified that the road had not been salted, that "there was black ice," and she could "see the shiny surface."  Id. at 528 (citations omitted).  Thus, given the record, there was "ample room to doubt [the defendant's] position that it properly salted the roads."  Id.  Therefore, the court found that the trial court erred in entering a nonsuit in favor of the defendant.

Here, there is no genuine dispute as to whether the alleged black ice was the result of an entirely natural accumulation followed by recent snowfall.  Although there was human intervention via Gambone's snow removal activities, there is no evidence that the black ice at issue was the result of those activities, rather than conditions naturally incident to the weather.  Weather data prepared at Plaintiff's request by CompuWeather's forensic meteorologists suggests that temperature fluctuations led to the melting and re-freezing of standing water, and that those conditions were conducive to the formation of black ice.  The data shows that on December 4, 2005 (the day before the incident), approximately 1.3 inches of snow and ice fell.  (Pl.'s Opp., Ex. E.)  Since the temperature was above freezing (32° F) in the afternoon, some of the existing snow and ice cover would have melted.  (Pl.'s Opp., Ex. E.)  As a result, the "standing water and moisture from the melting of snow and ice that occurred between approximately 1:45-5:30 PM EST on this day, would have refroze[n] after approximately 5:30

PM EST and remained frozen through the remainder of the evening," creating conditions that "were conducive for the development of areas of black ice on exposed, untreated, undisturbed outdoor surfaces after 5:30 PM EST." (Pl.'s Opp., Ex. E.)

On December 5, 2005 (the day of the incident), there was approximately one inch of snow and ice cover at the start of the day. (Pl.'s Opp., Ex. E.) According to the weather report:

> Precipitation in the form of light snow developed between approximately 6:15-6:30 PM EST which continued to fall through the remainder of the evening. Approximately 0.5 inch of snow fell on this day. Due to melting and compaction, approximately 1 inch of snow and ice cover was present at the end of the day. . . . [T]he temperature was above freezing (32° F) between approximately 12:30-4:30 PM EST on this day and this would have caused melting of existing snow and ice cover. After 4:30 PM EST, the temperature was at or below freezing though the remainder of the evening. As a result, the standing water and moisture from the melting of snow and ice that occurred between approximately 12:30-4:30 PM EST on this day, would have refroze[n] after approximately 4:30 PM EST and remained frozen through the remainder of the evening. Therefore, conditions were conducive for the development of areas of black ice on exposed, untreated, undisturbed outdoor surfaces after 4:30 PM EST.

(Pl.'s Opp., Ex. E.) Based on the foregoing data, the forensic meteorologists concluded "with a reasonable degree of meteorological certainty" that at the time of the incident, "approximately 0.5 inch of snow and ice was present on exposed, untreated, undisturbed outdoor surfaces," as a result of the previous day's snowfall and the melting, compaction, and refreezing of the snow and ice cover. (Pl.'s Opp., Ex. E.)

Plaintiff testified that she fell on December 5, 2005 around 6:00 p.m., and that it had been snowing for approximately a half hour to an hour before Plaintiff fell, facts that are supported by

Mr. Parlaman's testimony.[1]  However, the weather data shows that precipitation in the form of light snow did not develop until approximately 6:15-6:30 p.m.  (Pl.'s Opp., Ex. E.)  Thus, it is not clear when Plaintiff actually fell; if the weather data is correct, then Plaintiff actually may have fallen closer to 6:45 p.m.  Nevertheless, it is clear from the deposition testimony that light snow fell within a half hour to an hour of her fall.  Moreover, when asked what created the ice, Plaintiff testified: "I think I know what created the ice.  The temperature was dropping that day until it got to be where it was below 32, and it snowed."  (Beck Dep. 71:9-13, Dec. 29, 2008.)  Snowfall immediately prior to her accident would tend to favor the application of the hills and ridges doctrine because snow and ice resulting from a recent snowfall are natural phenomena incident to the climate.  See generally Harmotta v. Bender, 601 A.2d 837, 842 (Pa. Super. Ct. 1992) (hills and ridges doctrine applied where "[a] layer of fresh snow, which had fallen the day of the accident, covered a layer of packed snow and ice").  Also, the melting and refreezing of snow and ice cover is a natural cycle associated with temperature change.  See generally Casey v. Singer, 93 A.2d 470, 472 (Pa. 1953) ("When the law distinguishes between natural and artificial accumulations it refers to that accumulation due to a universal fall of snow followed by a universal freeze, as against the freezing of a small localized spot which a property-owner allows to be created and to exist as the result of some inaction on his part.").  Therefore, the weather data supports a finding that the accumulation at issue resulted from meteorological forces of nature.

Moreover, Gambone's "intervention" through the application of deicing material does not

---

[1]  Plaintiff testified that, at the time of the accident, "[i]t had been snowing maybe a half hour to an hour" (Beck Dep. 15:1-4, Dec. 29, 2008), and the snow had been "swirling around" (Beck Dep. 21:14).  Also, Mr. Parlaman stated that he had been walking his dog between 5:00 p.m. and 6:00 p.m., and "[i]t had been snowing for approximately 1 hour that evening...."  (Pl.'s Opp., Ex. A.)

create a genuine dispute, similar to the one raised in <u>Harvey</u>, as to whether the black ice resulted from an entirely natural accumulation. Gambone testified that he was on the premises on December 4, 2005, where he used a truck mounted spreader to spread ice melt product over the driveway and sidewalks of the development. (Gambone Dep. 21:10-26:8, Feb. 27, 2009.) After applying the ice melt product, he did not return until December 6, 2005 to follow up on the property. (Gambone Dep. 32:11-17.) His usual procedure was to return the next day to check for any refreeze, but he did not recall going back to the property on December 5, 2005. (Gambone Dep. 55:17-19; 60:24-61:15; 63:10-16). He further testified that he did not recall getting out of his truck and physically inspecting the mailbox area on December 4, 2005. (Gambone Dep. 56:15-57:17.) Based on such testimony, Plaintiff alleges that Gambone was negligent, and that such negligence resulted in refreeze and a black ice condition that caused Plaintiff's fall. (Pl.'s Opp. 10.) However, there is insufficient evidence to create a material factual dispute as to whether Gambone's snow removal activities were the cause of the black ice condition.

The snow removal operator in <u>Harvey</u> testified that he did not recall salting the premises after plowing, and that if the plowing and salting were performed correctly, one would not expect to see black ice. 901 A.2d at 528. By contrast, Plaintiff has not shown that Gambone failed to do something he was responsible for doing, and that doing that thing would have prevented the formation of black ice. Plaintiff has not provided, for instance, any evidence that Gambone failed to apply the right type or the proper amount of deicing material.[2] Plaintiff also has not shown that Gambone did not commence his snow removal activities at an appropriate time. When asked if there was a time period within which the contractor was required to be onsite to

---

[2] Gambone testified that he used eight bags of magnesium chloride. On December 9, 2005, he used 18 bags, but he also explained that the number of bags he uses depends on the amount of snowfall; on heavier snow days, he usually spreads more bags. (Gambone Dep. 52:16-54:13.)

inspect for icy conditions, RMS's owner, Ms. Bianchini, testified, "I don't think there was a time period established."[3]  (Bianchini Dep. 53:20-54:6, Dec. 29, 2008.)  She also admitted that the contract did not specify that Gambone had a continuing obligation to check the property.  (Bianchini Dep. 54:14-17; 65:1-70:11.)  She further testified that Ray's Snow Removal performed its services in a timely manner.  (Bianchini Dep. 58:1-5.)

Plaintiff also has not established that Gambone was obligated to get out of his truck and physically inspect the area, or return the next day to check for any refreeze.  The contract specifications governing Gambone's work merely provide, "If snow accumulation is under 2 inches, contractor shall be responsible to check the property and apply a deicing material if icy conditions exist."  (Third Party Defs.' Motion, Ex. D.)  They further provide, "A deicing material shall be applied to plowed and cleared areas to avoid icy conditions, only if necessary."  (Third Party Defs.' Motion, Ex. D.)  And, they set forth the general requirement that, when the total accumulation is seven inches or less, "[w]ork shall commence within the 1 hour period and shall be completed within 24 hrs. of the end of the snowfall...."  (Third Party Defs.' Motion, Ex. D.)  Thus, the obligations Plaintiff seeks to impose on Gambone are not set forth in the contract specifications.

Moreover, Gambone testified that he was able to observe the premises from inside his truck and determine whether he did not apply a sufficient amount of icemelt to an area.  (Gambone Dep. 57:11-20.)  Thus, Plaintiff's bare assertions that Gambone did not apply enough deicing material, did not get out of his truck to inspect the premises, and did not return the next

_____

[3] The contract specifications provide, "Work shall commence within the 1 hour period and shall be completed within 24 hrs. of the end of the snowfall if total accumulation is 7 inches or less…."  (Third Party Defs.' Motion, Ex. D.)  When asked if that provision required that the snow removal company begin the work within a one-hour period of the cessation of the snow and complete it within 24 hours thereafter, Ms. Bianchini replied: "I'm not sure."  (Bianchini Dep. 55:20-56:1, Dec. 29, 2008.)

day are not sufficient to raise a triable issue of fact as to whether Gambone's snow removal procedures created the dangerous condition which caused Plaintiff's accident.  There is no evidence that (1) Gambone was responsible for performing those activities; or (2) if he was, that he either failed to do so or would have prevented the formation of black ice by performing those activities.  Accordingly, the Court finds that the hills and ridges doctrine applies.

The first element of the hills and ridges doctrine is not met.  Plaintiff has presented no evidence that the snow and ice at issue accumulated in dangerous ridges or elevations.  See, e.g., Schell v. Jack Frost Mt. Co., 31 Pa. D. & C. 4th 43, 44 (Pa. Comm. Pl. 1996) (citing Rinaldi, 176 A.2d at 626) ("'[H]ills or ridges' are more than a slippery surface or minor elevations of ice; they must be of size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon.")  Therefore, having failed to establish that critical element, Plaintiff cannot support her negligence claims against Defendants.

### B.    Plaintiff Has Failed to Show that Defendants Had Notice.

Even if the hills and ridges doctrine does not apply, Plaintiff has not shown that Defendants had actual or constructive notice of the alleged dangerous condition.  Where the hills and ridges doctrine is not applicable, courts consider traditional tort principles to determine whether the plaintiff has sufficiently stated a claim for negligence.  Under traditional tort doctrines:

> A landowner owes a duty to protect invitees from the condition of its premises only if it: (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) failed to exercise reasonable care to protect them against the danger.

Smith, 1996 U.S. Dist. LEXIS 13699, at *7 (citing Ferencz v. Milie, 535 A.2d 59, 64 (Pa.

1987)); Restatement (Second) of Torts § 343 (1965) (adopted by the Pennsylvania Supreme Court in <u>Carrender v. Fitterer</u>, 469 A.2d 120, 123 (Pa. 1983)).  The Third Circuit has recognized that, under Pennsylvania law, a property owner is liable for injuries to a patron caused by a dangerous condition on the premises only if he "knows of or reasonably should have known of the condition."  <u>Tameru v. W-Franklin, L.P.</u>, No. 08-4132, 2009 U.S. App. LEXIS 23724, at *5-6 (3d Cir. Oct. 28, 2009) (citations omitted); <u>see also</u> Restatement (Second) of Torts § 343.

Here, Plaintiff has not alleged sufficient facts to raise a genuine dispute as to whether Defendants had actual or constructive notice of the dangerous condition.  Plaintiff argues, in a somewhat conclusory fashion, that "Gambone, as the snow removal contractor hired by RMS, was on the property on December 4 to apply deicing material," and as a result, "RMS and Gambone cannot claim that they had no notice of the icy conditions when Gambone was applying the material to prevent icy conditions on December 4." (Pl.'s Opp. 10.)  Although approximately one inch of snow fell on the day before the accident, and Gambone was on the premises on December 4, 2005 spreading a deicing material over the grounds, it does not necessarily follow that Holly Tree and RMS had notice of the black ice condition alleged to have caused Plaintiff's fall on December 5, 2005.  RMS was not based onsite, and Ms. Bianchini, testified that she only visited the property two or three times in 2005.  (Bianchini Dep. 32:15-23, Dec. 29, 2008.)  Ms. Bianchini also testified that the contractor was responsible for determining whether the snow accumulated to two inches or more, and that the only way she knew if the contractor performed its duties was if she received a call from a resident.  (Bianchini Dep. 45:4-46:2.)  She further testified that she relied on the Holly Tree board members, who resided in the complex, to verify that the contractors were actually onsite performing their snow removal services.  (Bianchini Dep. 45:4-46:2; 57:9-14.)  In addition, Ray's Snow Plowing did not call her

17

or send her an email notifying her that they were going to the premises or had just been to the premises.[4]  (Bianchini Dep. 46:9-15.)  If Ms. Bianchini did not receive a complaint from a resident, then the first notice she would receive, indicating that the contractor had performed its duties, was an invoice.  (Bianchini Dep. 46:16-21.)  She testified that she had no independent knowledge, other than the invoice, of whether the contractor performed its duties.  (Bianchini Dep. 56:12-22.)  Moreover, although Holly Tree's board members lived in the complex, Plaintiff has not adduced any evidence that they had actual notice of the black ice condition.  There is no evidence that Holly Tree's board members saw Gambone on the premises spreading deicing material or had any interaction with Gambone that day.  Furthermore, given the transparency of the black ice, even if the Holly Tree board members had inspected the mailbox area, they might not have seen the black ice just as Plaintiff did not.  Therefore, there is insufficient evidence that Defendants had actual notice of the black ice condition.

There is also insufficient evidence that Defendants had constructive notice of the black ice condition.  Weather data shows that, the day before the incident, the refreezing of standing water would not have occurred until after 5:30 p.m. (if it occurred at all), and that some of the snow and ice cover present at midnight melted over the course of the next day until around 4:30 p.m., when the temperature dropped again to a point at or below freezing.  (Pl.'s Opp., Ex. E.) Thus, on the day of Plaintiff's fall, the conditions were not conducive to the formation of black ice until after 4:30 p.m.  Plaintiff alleges that she fell around 6:00 p.m.  It is not clear when the alleged black ice actually formed in relation to her accident.  Plaintiff testified that she did not know how long the ice was there before she fell.  (Beck Dep. 71:5-8.)  Based on the weather

_____

[4] Gambone corroborated Ms. Bianchini's testimony when he stated that he did not check in with anyone from either Holly Tree or RMS upon arrival at the property, nor did he contact anyone when he left.  (Gambone Dep. 31:3-11.)

data, it might have formed after 5:30 p.m. on December 4, 2005, or after 4:30 p.m. on December 5, 2005.  Without any evidence that the black ice was observable for any significant period of time prior to the accident, a jury cannot reasonably infer that Defendants had constructive notice of the hazardous condition.  See, e.g., Tameru, 2009 U.S. App. LEXIS 23724, at *6.

In Tameru, the plaintiff was descending the steps of a hotel when she slipped and fell in the entryway to a hotel.  Id. at *2.  A weather report submitted by the plaintiff's expert indicated that weather conditions at the time of the plaintiff's fall were consistent with the presence of black ice and that the temperature was at or below freezing from 8:00 p.m. through midnight.  Id. at *3-4.  The accident occurred at some time during that interval, before 10:46 p.m.  Id. at *2-4. The Third Circuit concluded, "None of the evidence indicates that the defendant knew or should have known that ice had actually formed in the entryway to the hotel at the time the accident occurred."  Id. at *8.  The court also concluded, "The mere fact that the temperature had dropped to 31 degrees by 10:00 p.m. does not support a reasonable inference that the hotel should have known that ice had formed in the location where [the plaintiff] fell."  Id. at *8-9.  Even the plaintiff's post-accident observation of a patch of ice with a skid mark did "not support a reasonable inference that the hotel knew, or should have known, about the ice prior to her fall," especially when the security log and incident report prepared around the time of the plaintiff's fall indicated that the conditions were not icy.  Id. at *8-9.  In addition, the Court found, "Despite the meteorological evidence that the temperature had fallen below freezing in the hours before the accident, there was no evidence that ice had existed for any length of time before [the plaintiff] observed it."  Id. at *9; see also Mills v. Sears, Roebuck & Co., No. 97-3282, 1998 U.S. Dist. LEXIS 5893, at *6 (E.D. Pa. Apr. 28, 1998) ("In order to establish constructive notice, they must show that the liquid was on the floor for a sufficient time period such that by the exercise of

reasonable care, its existence would have been discovered.")  Thus, since the plaintiff failed to produce evidence of actual or constructive notice, the Third Circuit held that the district court properly granted summary judgment for the defendant.  Id.

Here, the Court finds that there is no genuine issue of material fact as to whether Defendants had actual or constructive notice of the condition which allegedly caused plaintiff's injuries.  Plaintiff has failed to show how Gambone's presence on the premises the day before should have put him (and by extension, Holly Tree and RMS) on notice of the formation of black ice the next day.  Absent a showing that Holly Tree and RMS had either actual or constructive notice of such a condition, Defendants cannot be held liable for Plaintiff's alleged injuries.  Accordingly, Plaintiff's negligence claim against Defendants also fails under traditional tort principles.  Although the grounds for Defendants' entitlement to summary judgment have been established, this Court will also address the causation issue raised by Defendants and Third Party Defendants to fully resolve all the issues at bar.

**C.     There is a Genuine Dispute as to What Caused Plaintiff to Fall.**

With respect to causation, the Court is persuaded that there is a genuine dispute regarding the existence of black ice on the curb.  Defendants rely heavily on Plaintiff's testimony that the area where she slipped "[l]ooked like dry curb" (Beck Dep. 27:18-28:19), and that she did not see the condition that caused her to slip (Beck Dep. 32:24-33:21).  Defendants also rely on Mr. Parlaman's testimony that he did not recall seeing any ice, only a light "dusting of snow on the ground."  (Parlaman Dep. 17:13-18:1, Feb. 27, 2009.)  However, Plaintiff's failure to discern (by sight) any black ice does not necessarily lead to the conclusion that there was no black ice on the curb where she slipped.  By its very definition, black ice is invisible.[5]  Further, Plaintiff testified

---

[5] According to the Oxford English Dictionary, "black ice," is "a thin hard transparent ice."

that she "felt ice under [her] feet," it felt "very slippery," and immediately when she put the ball

of her right foot on the curb, she slipped.  (Beck Aff. 6; Beck Dep. 61:23; 62:17-23.)  Moreover,

the weather data confirms that the conditions were conducive to the development of black ice.

(Pl.'s Opp., Ex. E.)  Thus, although Plaintiff did not see the ice, her assertion that she felt the ice

under her feet and the weather data indicating that conditions were conducive to the formation of

black ice are sufficient to raise a genuine dispute regarding the condition of the curb at the time

of Plaintiff's fall.

The Court also is persuaded that there is a genuine dispute as to whether the black ice

actually caused Plaintiff to fall.  Plaintiff testified that she felt ice under her feet before she fell to

the ground.  She also testified that she walked through grass covered with a half-inch of snow

before stepping on the curb.  (Beck Dep. 24:9-24.)  Therefore, there is a genuine dispute as to

what caused Plaintiff to fall, which is best resolved by a jury, whose province is to weigh the

credibility of conflicting evidence.  In Marks v. Tasman, 589 A.2d 205, 206 (Pa. 1991), the case

relied on by Plaintiff to support causation, the plaintiff was legally blind and was walking with

his friend on the sidewalk in front of the defendants' office.  His friend was walking in front of

him when the plaintiff tripped and fell.  589 A.2d at 206.  Neither the plaintiff nor his friend saw

what caused him to fall, however, immediately after the fall, his friend saw the plaintiff's feet in

a depression in the sidewalk.  Id. at 207.  The defendants filed a motion for summary judgment

on the grounds that the plaintiff had no direct evidence as to how he fell.  Id. at 206.  However,

the Pennsylvania Supreme Court denied the motion, stating that "it logically and reasonably

could be inferred," by a jury that the plaintiff fell because of the defective sidewalk.  Id. at 207.

Here, Plaintiff does not have the benefit of an eyewitness to testify that there was black

ice under her feet, however she does have the benefit of direct evidence (she felt ice under her

feet) and the weather data indicating that the conditions were conducive to the formation of black ice. Thus, it is not unreasonable for a jury to infer that black ice was the cause of Plaintiff's fall, and such an inference would not be grounded solely in speculation, conjecture, and guesswork. Therefore, there is at least a triable issue of material fact regarding the cause of Plaintiff's fall. However, the presence of a material dispute regarding causation is unavailing to Plaintiff since the Court has already established that the hills and ridges doctrine precludes her negligence suit, and even under traditional tort principles, her negligence claims fail because she has not met her burden of establishing that Defendants had notice of the alleged dangerous condition.

Accordingly, Plaintiff has failed to create a sufficient disagreement regarding material facts to defeat summary judgment, and her negligence claims (Counts II and III) against Holly Tree and RMS fail. In addition, since Plaintiff has produced no evidence upon which a jury could find that the absence of any snow removal or icemelt application at the time of Plaintiff's fall constitutes a breach of contract, Count I is also dismissed.

## CONCLUSION

Based on the foregoing, this Court concludes that Defendants, Holly Tree and RMS, are entitled to summary judgment. The hills and ridges doctrine protects them from liability because the snow and ice at issue were the product of natural phenomena, and Plaintiff is unable to establish that the snow and ice accumulated into dangerous hills and ridges. Moreover, even under traditional tort principles, Plaintiff's negligence claims fail because Plaintiff has not established that Defendants had notice of the alleged dangerous condition; therefore, Defendants cannot be held liable for Plaintiff's injuries allegedly caused by such a condition. Since all claims against Holly Tree and RMS are dismissed, the third party claims raised against Ray's Snow Plowing and Gambone are extinguished. An appropriate order follows.

22